Lyle **LIEBER**

v.

**UNION CARBIDE CORPORATION, NUCLEAR DIVISION.**

No. CIV. 3–83–477.

United States District Court, E.D. Tennessee, N.D.

Dec. 16, 1983.

Dorothy Stulberg, Oak Ridge, Tenn., for plaintiff.

E.H. Rayson, Warren L. Gooch, Knoxville, Tenn., G. Wilson Horde, E.C. McFaddin, Oak Ridge, Tenn., for defendant.

OPINION RENDERED FROM BENCH

ROBERT L. TAYLOR, Chief Judge.

Plaintiff Lyle Lieber, a former employee now retired of defendant Union Carbide Corporation, Nuclear Division [UCC–ND], has sued defendant for breach of an alleged contractual right to be provided an annual performance appraisal. Plaintiff's theory is that the policy and practice of UCC–ND to provide employees with annual performance reviews formed a part of the employment contract. Plaintiff says that defendant breached the contract by failing to provide plaintiff annual performance review in 1978 and 1979.[1] Plaintiff also says that during this period, he received no salary increases. He claims a relationship between lack of performance reviews and lack of salary increases. Plaintiff says that, if he had been advised in an annual performance review of any deficiency in his performance, he could have corrected his performance and consequently received salary increases. Plaintiff says that if he had received salary increases, he would have received increased retirement benefits. Plaintiff sues for the alleged additional salary he should have been paid, and for the additional pension benefits he alleges he would have been due upon retirement, had he received the salary increases.

Defendant's theory is that the performance review policy was not part of the employment contract. Defendant says that the annual performance review was a managerial tool to be used in the discretion of the supervisors. Defendant further says that in 1977, 1978, and 1979, plaintiff's performance was rated by his supervisor as marginal. Although defendant did not follow the recommended procedure for annual performance review, defendant says that the method of review is discretionary and that plaintiff was made aware of dissatisfaction with his work and of what was needed for improvement. Defendant says further that the absence of a more formal review was not the proximate cause of salary decisions made with respect to plaintiff. Defendant says that during plaintiff's employment at UCC–ND his work record was below average.

1. Plaintiff says that he was entitled to be given specific feedback on his work performance in an interview with his supervisor. Plaintiff relies on a manual (*infra* p. 564) outlining this procedure which was distributed only to UCC–ND supervisory personnel.

Beginning in June 1977 UCC–ND adopted a policy for an annual performance review for salaried employees. *Union Carbide Corporation Nuclear Division Annual Performance Review Manual*, p. 1 [hereinafter manual]. This policy and the procedure to implement the policy was published in a manual which was distributed to supervisory personnel only. However, the President's Policy Statement, found on page one of the manual, was posted on the bulletin board where plaintiff worked and read in part:

> The policy of the Union Carbide Corporation, Nuclear Division, is to have a performance review annually with each salaried employee in order to relate organizational and individual goals, to review actual performance in the light of established goals, to lay a firm basis for further individual development, and to serve as an input for career planning and salary action.

Although the manual outlines a procedure for conducting annual performance appraisals, the policy statement indicates that annual performance review is to be "a uniform, but not rigid, system." Manual, p. 1. Thus, the question for the Court is whether an employer's policy statement endorsing annual performance reviews, which is made known to employees, creates a contractual right entitling employees to an annual performance review in the form specified in a manual, distributed to supervisory personnel only, which outlines the procedure to implement the policy.

In at least one case, a Tennessee court has held that contractual rights were created by language in an employee handbook, furnished to all employees, which *guaranteed* that certain policies, practices and procedures would be followed by the company. *Hamby v. Genesco*, 627 S.W.2d 373 (Tenn. App.1981), *cert. denied* (Tenn.Sp.Ct. January 25, 1982) (emphasis supplied). However, the Tennessee courts also have held that relatively *general statements* in em-

ployee handbooks do not create contractual rights. *Whittaker v. Care-More, Inc.*, 621 S.W.2d 395 (Tenn.App.1981), *cert. denied* (Tenn.Sp.Ct. September 14, 1981) (emphasis supplied). Notably, in *Whittaker* the Court found no guaranties or binding commitment contained in the language in the handbook.[2] *Id.* at 397. The Tennessee courts have not considered whether an employer's policy statement not contained in an employee handbook creates contractual rights. The determination of this issue depends on whether the conduct and circumstances of the parties and the language contained in the policy statement demonstrate a meeting of minds by the parties that the policy statement conferred a contractual right entitling plaintiff to an annual performance review. *See Judd v. Heitman*, 402 F.Supp. 929, 933 (M.D.Tenn. 1975).

It is the opinion of the Court and the Court finds that the record in this case shows that plaintiff did not have either a written or implied agreement with defendant requiring that plaintiff be given an annual performance review. Defendant's annual performance review policy was an internal management policy and guide for use in managing the facility. It was not thereby intended to create an employee benefit right and no such right was created by the practice.

For the reasons indicated, plaintiff's suit must be dismissed.

Order Accordingly.

---

**2.** The language in the handbook stated: "An employee may reasonably expect uninterrupted employment year in and year out. Any employee doing his work in a satisfactory manner and working for the good of the organization has little to fear about job security." *Whittaker*, 621 S.W.2d at 397.